**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Monique J. Harrington**

**v.**

**City of Nashua,**
**Nashua Police Department,**
**Mark Schaaf**

Civil No. 07-cv-299
Opinion No. 2009 DNH 89

**MEMORANDUM AND ORDER**

Monique J. Harrington has filed an action pursuant to 42 U.S.C. § 1983 against the City of Nashua, the Nashua Police Department, and Nashua Police Detective Mark Schaaf, both in his individual and official capacities (the "defendants"). Harrington alleges that defendants violated her Fourth Amendment right to be free from unreasonable seizures by restricting her liberty without reasonable suspicion and instituting legal process against her. (Compl., Doc. No. 1, ¶¶ 52-53.) She also asserts other state law claims. Defendants have filed a motion for summary judgment, and for the reasons set forth below, I grant that motion with respect to Harrington's federal claims.

## I. FACTS

The roots of this civil action can be traced back to a

sexual encounter that took place between Harrington and her coworker, referred to here as "Brett," on or about June 26, 2003. After taking a ride with Brett on his motorcycle earlier in the day, Harrington then went back to his apartment. (Defs.' Mot. for Summ. J., Doc. No. 11-2, at 3.) What happened next is unclear, as Harrington herself has offered conflicting versions of the incident. In her Complaint, she alleges that Brett raped her, "specifically anal intercourse, by overcoming her through the actual application of physical force, physical violence and/or superior physical strength." (Compl., Doc. No. 1, ¶ 12.) Having been the victim of a traumatic sexual assault as a young teenager, Harrington did not report the alleged rape so as to "avoid a similar experience." (Id. ¶ 14.) Following the incident, she quit her job so that she would not have to see Brett at work each day, and she sought mental health treatment. (Id. ¶ 15-16.)

On September 3, 2003, Brett entered the Nashua Police Station and claimed that he had received a threatening phone call wherein the caller accused him of raping Harrington. (Defs.' Mot. for Summ. J., Doc. No. 11-2, at 2.) Earlier that evening, Harrington told her then-fiancé about the June 26 incident, and he pressured her to report the alleged sexual assault to the

police. Harrington arrived at the police station shortly after Brett, and she informed Officer Brian Trefry that Brett had raped her and that she had repeatedly told him to stop. (Id. at 3.) Trefry and another officer questioned Harrington from 9:30pm until 10:52pm, at which point, the matter was referred to Detective Schaaf. Schaaf conducted his own interview of Harrington, which lasted for approximately an hour and a half before ending at 12:22am. (Compl., Doc. No. 1, ¶¶ 19-22.) It is this interview, which might be more accurately termed an interrogation, that is the source of the current litigation.

Harrington alleges that throughout the course of her meeting with Schaaf, she felt exhausted and requested that she be able to go home for the night and resume the following day. Instead, Schaaf continued with his questioning, and at one point, falsely informed Harrington that Brett had surreptitiously recorded his sexual encounter with her and that the police officers had the tape in their possession. In reality, no such tape existed. (Defs.' Mot. for Summ. J., Doc. No. 11-2, at 4.) Schaaf allegedly told Harrington that the other officers were watching the tape in another room, and she then began "crying and sobbing" in humiliation. (Compl., Doc. No. 1, ¶¶ 24-26.) Schaaf then produced the tape that he represented was a recording of the

alleged rape and asked Harrington if they should watch it. Harrington claims that her request to adjourn for the evening was again denied, as was her request for the "presence of a female victim/witness advocate." (Id. ¶¶ 28-32.)

At 12:22am, Harrington waived her *Miranda* rights, and Schaaf began to videotape his interrogation. Harrington explained that earlier in the day on June 26, she had gone for a ride with Brett on his motorcycle. She then admitted to going back to his apartment where there was "back rubbing" and oral sex.[1] (Harrington Decl., Doc. No. 13-2, at 5.) Harrington then retracted her initial allegations of rape; her exchange with Schaaf went as follows:

| | |
|---|---|
| **Detective Schaaf:** | So he [Brett] didn't force any sex of any kind of you [*sic*] that night is that correct? |
| **Harrington:** | Ya, yes. |
| **Detective Schaaf:** | What I'm saying is correct is that what your [*sic*] saying yes to? |
| **Harrington:** | Yes. |

[1] Although the Complaint asserts that the alleged rape followed consensual oral sex, Harrington stated in her December 23, 2008 deposition that she and Brett did not engage in oral sex and that she was unsure as to why she told Detective Schaaf otherwise. (Harrington Dep., Doc. No. 13, at 8.) She also claimed in her deposition that on the night in question she and Brett never kissed, but that she did consent to certain touching. (Id.)

(Id. at 6.)[2] Harrington then went on to explain the victimization she had suffered from a previous sexual assault when she was younger and how it caused her to be "emotionally imbalanced" and in need of "help." (Id. at 7-8.) At 12:36am, the videotaped portion of Harrington's confession concluded. (Compl., Doc. No. 1, ¶ 44.) Schaff then "instituted legal process in the form of a criminal complaint charging [Harrington] with making a False Report to Law Enforcement." (Id. ¶ 45.) Harrington was arrested and released that night on personal recognizance. (Defs.' Mot. for Summ. J., Doc. No. 11-2, at 5.) The terms of Harrington's bail required her to appear in court, not commit any crimes, notify the court of any change in address, refrain from excessive consumption of alcohol, and refrain from the use of any controlled substances. (Id.) Harrington's employment with Charles Schwab required her to report the criminal charges, and her failure to do so resulted in her termination. (Compl., Doc. No. 1, ¶ 48.) Harrington was acquitted of the criminal charge after a bench trial in Nashua District Court on September 23, 2004.

---

[2] Admittedly, the transcript excerpted here (as well as at other points) reveals a rather ambiguous "admission"; however, whether Harrington actually admitted to lying about being raped on the night in question is not an issue before this court.

On September 22, 2007, Harrington filed the current action. In Count 1 of her Complaint, Harrington alleges that defendants violated her Fourth Amendment rights "by restricting the liberty of the plaintiff without a reasonable suspicion . . . [and] by instituting legal process in the form a criminal complaint upon which the plaintiff was arrested without probable cause to believe that the plaintiff had committed a criminal offense. . . ." (Id. ¶¶ 52-53.) Count 1 also alleges that the City of Nashua tolerated unconstitutional practices by failing to ensure that officers of the Nashua Police Department respected the constitutional rights of those living in Nashua, failing to "promulgate procedures and policies for deprivation of liberty and institution of legal process leading to arrest that were consistent with the Fourth Amendment," and permitting constitutional violations to persist. (Id. ¶ 54.) As a result of such conduct, Harrington complains that she has suffered mental anguish, lost wages and loss of earning capacity, loss of life enjoyment, and other "compensable damages." (Id. ¶ 56.) She seeks punitive damages, "as well as an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988." (Id.) In Count 2, she brings negligence claims against Schaaf and the City of Nashua for allegedly improper questioning and restraint. Count 3

asserts that the City of Nashua was negligent in the hiring, training, and supervision of Nashua police officers, in particular, Schaaf. Count 4 asserts a state law claim for malicious prosecution, and in Count 5, Harrington brings a state tort claim for invasion of privacy. Finally, in Count 6, Harrington asserts a state law cause of action for negligent or intentional infliction of emotional distress. Defendants have filed a motion for summary judgment addressing all six counts.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment must first identify the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

## III. **ANALYSIS**

Harrington asserts both federal and state law causes of action. In her federal claim, Harrington argues that defendants violated her Fourth Amendment right to be free from unreasonable seizures "by restricting the liberty of plaintiff without a reasonable suspicion" and "by instituting legal process in the form of a criminal complaint upon which the plaintiff was arrested without probable cause. (Compl., Doc. No. 1, ¶¶ 52-53.) Defendants attack this claim by characterizing it as a claim of false imprisonment and then arguing that the claim is barred by the statute of limitations. In the alternative, they argue that even if Harrington has alleged a malicious prosecution claim, her claim is not cognizable as a Fourth Amendment violation. Below, I unpack Harrington's Fourth Amendment claim and explain that it encompasses distinct claims for both false imprisonment and malicious prosecution. I then conclude that her false imprisonment claim is barred by the statute of limitations and her malicious prosecution claim fails to plead a Fourth Amendment violation.

### A. Count 1 Asserts Two Distinct Causes of Action

When analyzing claims in a complaint, the focus is on the underlying facts at the heart of the allegations. The precise

term that a plaintiff uses in labeling a cause of action is irrelevant, and, at times, even misleading. See Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 5 (1st Cir. 1995) (analysis of § 1983 claims requires "federal courts to look to the true nature of the constitutional claims being asserted, *rejecting labels*") (Lynch, J., concurring) (emphasis added). Nor is a court bound by a plaintiff's attempt to sweep multiple claims into a single cause of action. In the case before the court, defendants' motion for summary judgment turns on whether Harrington has asserted a single cause of action for malicious prosecution, or separate constitutional claims for false imprisonment and malicious prosecution. The U.S. Supreme Court, in Wallace v. Kato, has decisively addressed this issue. 549 U.S. 384 (2007).

In Wallace, the Court held that when one is detained without process (in other words, falsely imprisoned), that tortious act continues until the point at which legal process is instituted against him. Id. at 389. From that moment forward, "unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process." Id. at 390. Applying the Supreme Court's holding in Wallace to the case at hand, it is clear that

Harrington asserts two, distinct causes of action brought pursuant to 42 U.S.C. § 1983. The first, a claim for false imprisonment, concerns her alleged improper treatment at the police station without legal process before her arrest. The second, a claim for malicious prosecution, focuses on the wrongful institution of legal process against her by the filing of a criminal complaint. See Nieves v. McSweeney, 241 F.3d 46, 49 (1st Cir. 2001) (noting that the trial court "segregated all the federal-law claims that were based on the events of May 12, 1994 (such as those rooted in excessive force and false arrest)" and then made judgments about whether those claims were time-barred).

B. Statute of Limitations Bars Harrington's Claim for Detention Without Process

Defendants first argue that Harrington's Fourth Amendment claims are barred by the statute of limitations. In adjudicating § 1983 claims, courts must "borrow the forum state's limitation period governing personal injury causes of action." Id. at 51; see Wallace, 549 U.S. at 387. Here, the parties agree that Harrington's § 1983 claims are subject to New Hampshire's three year statute of limitations for tort claims. See N.H. Rev. Stat. Ann. § 508:4; Defs.' Mot. for Summ. J., Doc. No. 11-2, at 7;

Pl.'s Opp'n to Summ. J., Doc. No. 18, at 5.

The point at which a § 1983 claim accrues, however, is a question of federal law. Wallace, 549 U.S. at 388. The statute of limitations on a false imprisonment claim by a person who is detained without a warrant until criminal charges are filed begins to accrue "once the victim becomes held pursuant to *such* [legal] *process* -- when, for example, he is bound over by a magistrate or arraigned on charges." Id. at 389. Harrington made her videotaped statement in the early morning hours on September 4, 2003. Schaff then "instituted legal process in the form of a criminal complaint charging [Harrington] with making a False Report to Law Enforcement." (Compl., Doc. No. 1, ¶ 45.) Harrington was arrested and released that night on personal recognizance. Thus, the statute of limitations on her false imprisonment claim began to run from that time on September 4, 2003. As this present action was filed more than three years later, on September 22, 2007, Harrington's false imprisonment claim is time-barred.

Turning next to Harrington's malicious prosecution claim, she alleges that defendants wrongfully instituted legal process against her by charging her with the crime of making a false statement. The statute of limitations in a malicious prosecution

action "begins to run upon the termination of the antecedent criminal proceedings." Nieves, 241 F.3d at 51; see Heck v. Humphrey, 512 U.S. 477, 489 (1994). Applied to the case at bar, the cause of action for Harrington's malicious prosecution accrued on September 23, 2004, when she was acquitted of the charge brought against her. As defendants indirectly concede in their motion for summary judgment, Harrington's malicious prosecution claim is not time-barred. (Defs.' Mot. for Summ. J., Doc. No. 11-2, at 8 n.4.)

C. Malicious Prosecution Claim Fails to Identify a Seizure.

An individual has no substantive due process right to be free from wrongful prosecution. Albright v. Oliver, 510 U.S. 266, 274-75 (1994). Therefore, in order to state a § 1983 claim for wrongful institution of legal process, there must be *some* constitutional right – other than the due process clause of the Fourteenth Amendment – that has been infringed. Id. at 271, 275; see Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996). The Fourth Amendment may "furnish the constitutional peg on which to hang" a § 1983 malicious prosecution claim, see Albright, 510 U.S. at 271 n.4, but technically, that proposition remains "an open question . . . ,"

Nieves, 241 F.3d at 54. Proceeding on the assumption that the Fourth Amendment provides "fertile soil" for such a claim, a plaintiff then faces "the task of showing some *post-arraignment* deprivation of liberty, caused by the application of legal process, that approximates a Fourth Amendment seizure." Nieves, 241 F.3d at 54. A seizure, as recognized by the Fourth Amendment, occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied*." Brower v. County of Inyo, 489 U.S. 593, 597 (1989).

Harrington's § 1983 malicious prosecution claim is based on the argument that defendants violated her Fourth Amendment rights when she was arrested and charged with making a false report and then subsequently released on personal recognizance pending her criminal trial. (Pl.'s Opp'n to Summ. J., Doc. No. 18, at 10.) It is incumbent on her, therefore, to identify a "post-arraignment deprivation of liberty" that amounts to a seizure. See Nieves, 241 F.3d at 54. Harrington argues that her release on personal recognizance, and the conditions of that release, amounted to being held in custody because she was subjected to restraints not generally shared by the public at large. (Pl.'s Opp'n to Summ. J., Doc. No. 18, at 10.) Moreover, she cites her loss of employment, the significant degradation of her employment

prospects, the reputational harm she suffered, and the emotional and financial stresses inflicted on her in preparing for trial, as other identifiable seizures. (Id.) "The question thus becomes: do these strictures, in the aggregate, constitute a Fourth Amendment seizure sufficient to ground a section 1983 malicious prosecution claim?" Nieves, 241 F.3d at 55.

The terms of Harrington's personal recognizance are, for the most part, "run-of-the-mill conditions . . . [that] do not fit comfortably within the recognized parameters" of what amounts to a seizure. See id. at 55. Nonetheless, Harrington argues that because she was required to attend all court proceedings under the penalty of incarceration, she was in custody. (Pl.s' Opp'n to Summ. J., Doc. No. 18, at 10.) Permitting such a broad definition of seizure or custody would be problematic. As the First Circuit has noted, "if the concept of a seizure is regarded as elastic enough to encompass standard conditions of pretrial release, virtually every criminal defendant will be deemed to be seized pending the resolution of the charges against him." Nieves, 241 F.3d at 55. The pretrial release in this case is similar to that at issue in Nieves v. McSweeney, where the appellants were released on their own recognizance. Id. They cited as evidence of their "seizure" that they "suffered the

stress and anxiety of knowing not only that serious criminal charges were pending against them, but also that their reputations had been sullied; they appeared before criminal court a number of times in the pretrial period; and they endured the trial." Id. The First Circuit determined that these conditions were "benign" and did not amount to a post-arraignment seizure. Id. at 57. In reaching that conclusion, the court noted that the appellants were not held in custody "after the initiation of criminal proceedings, required to post a monetary bond upon arraignment, subjected to restrictions on their travel, or otherwise exposed to any significant deprivation of liberty." Id. at 56. In the case at bar, Harrington was required to attend court proceedings and notify the court of any change in address, but the only "restrictions" on her liberty were that she refrain from committing crimes, using controlled substances, or engaging in the excessive use of alcohol. These limitations hardly transform her pre-trial release into a Fourth Amendment seizure. Although other courts have found that the terms of pretrial release amount to a seizure where, among other things, a defendant's right to travel outside the state is restricted, no such restriction is implicated in Harrington's case. See, e.g., Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998);

Murphy v. Lynn, 118 F.3d 938, 945-46 (2d Cir. 1997).

In an effort to bolster her claim that she was subject to a seizure following the institution of legal process, Harrington points to other harms that occurred during that time. For example, she references her loss of employment, the difficulty she had in finding new work, the irreparable harm done to her reputation as an honest and law-abiding citizen, and the emotional and financial strains that come with mounting a defense to criminal charges. (Pl.'s Opp'n to Summ. J., Doc. No. 18, at 10.) These are, without question, serious and legitimate injuries. Unfortunately for Harrington, however, they do not transform what happened to her into a seizure cognizable under the Fourth Amendment. In arguing to the contrary, Harrington cites Justice Ginsburg's concurring opinion in Albright v. Oliver, which argues that a defendant released pretrial is "scarcely at liberty; he remains apprehended, arrested in his movements, indeed 'seized' for trial, so long as he is bound to appear in court and answer the state's charges." See 510 U.S. at 279 (Ginsburg, J., concurring). Setting aside any analysis of the merits of this dicta, the First Circuit has expressly rejected it, thus ending the matter as it applies to this case. See Nieves, 241 F.3d at 55 ("Notwithstanding the eminence of its

sponsor, the view that an obligation to appear in court to face criminal charges constitutes a Fourth Amendment seizure is not the law."). Having failed to identify a "post-arraignment deprivation of liberty" that amounts to a Fourth Amendment seizure, Harrington's malicious prosecution claim must fail.

## IV. CONCLUSION

Defendants' motion for summary judgment (Doc. No. 11) is granted with respect to Count 1. There is no independent jurisdictional basis for the remaining state law claims asserted in Counts 2-6. I therefore decline to exercise judgment over those claims, and they are dismissed without prejudice. The clerk shall enter judgment and close the case in accordance with this Memorandum and Order.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

June 19, 2009

cc: Gordon R. Blakeney, Jr., Esq.
Brian J.S. Cullen, Esq.