# United States Court of Appeals
## For the First Circuit

---

No. 09-2275

MONIQUE J. HARRINGTON,

Plaintiff, Appellant,

v.

CITY OF NASHUA ET AL.,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

---

Before

Torruella, Selya and Howard, Circuit Judges.

---

Gordon R. Blakeney, Jr. for appellant.
Brian J.S. Cullen, with whom CullenCollimore, PLLC was on brief, for appellees.

---

June 29, 2010

---

**SELYA**, <u>Circuit Judge</u>. This appeal involves the timing and elements of causes of action brought under 42 U.S.C. § 1983 for alleged Fourth Amendment violations in the nature of false imprisonment and malicious prosecution. In the course of addressing those matters, however, we must iron out a wrinkle concerning the scope and effect of a judicial admission. Ruling at the summary judgment stage, the district court found for the defendants. The court concluded in substance that the claim of false imprisonment was time-barred and that the claim of malicious prosecution lacked the necessary showing of a predicate Fourth Amendment violation. The court, however, failed to confront the effect of the judicial admission.

We hold that the admission is not controlling because, in pertinent part, the admitted allegation is unclear and, in any event, concerns a matter of law rather than a matter of fact. And, after separating wheat from chaff on the arguments anent the timing and elements of the asserted causes of action, we affirm the judgment below.

## I.  BACKGROUND

Consistent with the summary judgment standard, we rehearse the facts in the light most flattering to the plaintiff, drawing all reasonable inferences in her favor. <u>Houlton Citizens' Coal.</u> v. <u>Town of Houlton</u>, 175 F.3d 178, 184 (1st Cir. 1999).

On June 26, 2003, the plaintiff, Monique J. Harrington, went for a ride with a co-worker and then repaired to his apartment in Nashua, New Hampshire. A sexual encounter ensued. The plaintiff alleges that, during this encounter, her co-worker raped her.

Over two months later, the plaintiff told her fiancé about the incident. He pressed her to report it to the authorities, and she went to the police station for that purpose on September 3, 2003. Unbeknownst to her, the co-worker, shortly before, had complained to the police that he had received a menacing telephone call. In it, the caller reportedly accused him of having raped the plaintiff.

Once the plaintiff arrived at the police station, two officers interviewed her for more than an hour, starting at 9:30 p.m. At 10:52 p.m., they turned her over to Detective Mark Schaaf. The plaintiff alleges that, during the ensuing interrogation, Detective Schaaf refused her repeated requests to go home, denied her entreaty for the presence of a female victim/witness advocate, and lied profusely (telling her, for example, that her co-worker had videotaped their sexual encounter and that officers in another room were watching the video).

The interrogation lasted until 12:22 a.m. At the conclusion of the session, the plaintiff waived her <u>Miranda</u> rights, <u>see</u> <u>Miranda</u> v. <u>Arizona</u>, 384 U.S. 436, 478-79 (1966), and retracted

her allegations of rape. Detective Schaaf then arrested the plaintiff without a warrant and swore out a criminal complaint, charging her with making a false report to law enforcement personnel (a misdemeanor). See N.H. Rev. Stat. Ann. § 641:4.

The plaintiff was arraigned and released on personal recognizance at approximately 2:00 a.m. on September 4.[1] The conditions of her release required her to appear in court, notify the court of any change in address, forbear from committing any crimes, and refrain from using either controlled substances or excessive amounts of alcohol. On September 23, 2004, following a bench trial in state court, a judge acquitted the plaintiff on the false reporting charge.

On September 22, 2007, the plaintiff repaired to the federal district court and sued the City of Nashua, its police department, and Detective Schaaf. Her complaint contained both federal claims and supplemental state-law claims. Although she lumped her federal claims together under the rubric of 42 U.S.C. § 1983, the district court broke them down into two separate claims. The court noted that the plaintiff alleged that the

---

[1] The record does not show when, after the arrest, the detective actually filed the complaint. That information might have been important. See New Hampshire v. Chaisson, 458 A.2d 95, 101-02 (N.H. 1983) (holding that "adversary judicial proceedings are commenced by the filing of the complaint in court, and not merely by the signing of the complaint" (emphasis in original)). Without it, there is nothing in the record on which to ground an inference that the plaintiff was detained after the institution of the criminal proceedings.

defendants had violated her Fourth Amendment right to be free from unreasonable seizures by (i) restricting her liberty without reasonable suspicion (false imprisonment) and (ii) wrongfully instituting criminal process against her (malicious prosecution).

Following the completion of pretrial discovery, the defendants moved for summary judgment. The district court granted the motion as to the plaintiff's federal claims and simultaneously dismissed without prejudice the supplemental state-law claims. Harrington v. City of Nashua, No. 07-cv-299, 2009 WL 1744569 (D.N.H. June 19, 2009). The court held that the false imprisonment claim was time-barred because the plaintiff had sued more than three years after the claim accrued. Id. at *4. The court held that the malicious prosecution claim, though timely, failed to show a cognizable Fourth Amendment violation. Id. at *4-6.

The plaintiff moved to alter or amend the judgment, Fed. R. Civ. P. 59(e), but to no avail. See Harrington v. City of Nashua, No. 07-cv-299, 2009 WL 2462274 (D.N.H. Aug. 12, 2009). This timely appeal followed.

**II. ANALYSIS**

A district court's grant of summary judgment is reviewed de novo. Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010); Houlton Citizens' Coal., 175 F.3d at 184. We will uphold the entry of summary judgment if the record, evaluated in the light most favorable to the nonmoving party, shows that there

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(2).

On appeal, the plaintiff does not challenge the dismissal of her supplemental state-law claims.  Instead she takes dead aim at the district court's handling of her false imprisonment and malicious prosecution claims.  She also criticizes the district court's denial of her motion to alter or amend the judgment.

As said, each of the plaintiff's federal claims falls under the carapace of 42 U.S.C. § 1983.  Section 1983 provides a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or laws of the United States.  Evans v. Avery, 100 F.3d 1033, 1036 (1st Cir. 1996).  To satisfy the statute's "injury" requirement, the plaintiff must show a deprivation of a federally secured right. Farrar v. Hobby, 506 U.S. 103, 112 (1992).  Against this backdrop, we address the plaintiff's claims of error one by one.

### A.  False Imprisonment.

Although section 1983 provides a federal cause of action, the length of the limitations period is drawn from state law. Wallace v. Kato, 549 U.S. 384, 387 (2007); Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005).  The federal court must borrow the limitations period from the forum state.  Owens v. Okure, 488 U.S. 235, 239 (1989); Centro Medico, 406 F.3d at 6.

In this instance, the parties agree that the section 1983 claims are governed, temporally, by New Hampshire's three-year statute of limitations for personal injury tort claims. See N.H. Rev. Stat. Ann. § 508:4. Because the plaintiff commenced her action on September 22, 2007, her false imprisonment claim is time-barred if it accrued more than three years prior to that date.

Unlike the limitations period itself, the accrual date of a section 1983 claim is a matter of federal law and, therefore, is "governed by federal rules conforming in general to common-law tort principles." Wallace, 549 U.S. at 388. The limitations period for a Fourth Amendment claim of false imprisonment begins to run when the false imprisonment ends; that is, when the putative plaintiff is either released or detained pursuant to legal process. See id. at 389; Mondragón v. Thompson, 519 F.3d 1078, 1082-83 (10th Cir. 2008).

In this case, Detective Schaaf arrested the plaintiff without a warrant and swore out a criminal complaint against her. These actions occurred in the early morning hours of September 4, 2003, and the plaintiff was immediately arraigned and released on personal recognizance. The clustering of these events on a single date leads unerringly to the conclusion that the plaintiff's claim accrued at that time. Because the plaintiff did not file suit until more than three years later — on September 22, 2007 — her false imprisonment claim is barred by the statute of limitations.

The plaintiff does not go quietly into this dark night. She suggests that the accrual of her false imprisonment claim should not be measured by the usual metrics for such claims but, rather, by the metrics applicable to malicious prosecution claims. In service of this suggestion, she argues that, from the officers' point of view, the main objective of her detention was to supply probable cause for the ensuing prosecution and, therefore, that malicious prosecution furnishes the most appropriate model from which to determine an accrual date. If that argument prevails, her false imprisonment claim would not have accrued until her acquittal on September 23, 2004, see Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001), making that claim timely.

This suggestion is clever, but it ignores a critical distinction between false imprisonment and malicious prosecution. The Supreme Court has held that when a plaintiff's claim arises out of "detention *without legal process*," the tort of false imprisonment provides the appropriate analogy from which to ascertain the accrual date of a cause of action under section 1983. Wallace, 549 U.S. at 389 (emphasis in original). The Court explained that when the period of false imprisonment ends, any unlawful detention thereafter "forms part of the damages for the entirely distinct tort of malicious prosecution." Id. at 390 (citation and internal quotation marks omitted). It is the latter tort, not the tort of false imprisonment, that "remedies detention

accompanied, not by absence of legal process, but by <u>wrongful institution</u> of legal process." <u>Id.</u> (emphasis in original).  In other words, the commencement of a criminal case by the institution of legal process marks the dividing line between claims of false imprisonment and claims of malicious prosecution, making those species of claims legally separate and distinct.  <u>See</u> <u>Wilkins</u> v. <u>DeReyes</u>, 528 F.3d 790, 799 n.5 (10th Cir. 2008); <u>see</u> <u>also</u> <u>Fox</u> v. <u>DeSoto</u>, 489 F.3d 227, 235 (6th Cir. 2007) (discussing <u>Wallace</u>'s clarification of the distinction between claims of false imprisonment and those of malicious prosecution).

The plaintiff's argument runs aground on these shoals.  Consequently, her claim that the defendants restricted her liberty without reasonable suspicion begins with her detention at the police station and ends with her release on personal recognizance.  The essence of her claim, therefore, is detention without legal process.[2]  That is a classic claim of false imprisonment, and its timeliness is to be measured by the metrics applicable to the tort of false imprisonment.  <u>See</u> <u>Wallace</u>, 549 U.S. at 389.  Because these metrics establish an accrual date of September 4, 2003, the claim is time-barred.

---

[2] The plaintiff contends that her warrantless arrest and subsequent detention constituted detention pursuant to legal process because she actually was arrested based on the criminal complaint.  We deal with this contention in our discussion of her malicious prosecution claim.  <u>See</u> <u>infra</u> Part II(B).

The plaintiff has a fallback position.  She muses that her false imprisonment claim is timely under a "continuing wrong" theory.  She argues, in effect, that her two claims — false imprisonment and malicious prosecution — are inextricably intertwined because the defendants' conduct was part of a single plan to deprive her of her liberty interests.  Thus, her false imprisonment claim accrued at the same time as her malicious prosecution claim, and not before.

In support of this reasoning, the plaintiff relies chiefly on <u>Robinson</u> v. <u>Maruffi</u>, 895 F.2d 649 (10th Cir. 1990).  There, the court held that a claim of false imprisonment was not time-barred because the plaintiff's arrest was part of a "continuing violation" — a conspiracy to prosecute him maliciously — that continued until he was finally acquitted.  <u>Id.</u> at 655.

The attempt to prop up an untimely claim by invoking <u>Robinson</u> is not original.  We made short shrift of a substantially similar argument in <u>Nieves</u>, where we pointed out that <u>Robinson</u> was an "unusual case in which the malicious prosecution conspiracy began before the victim's arrest and encompassed it."  <u>Nieves</u>, 241 F.3d at 52.  With that in mind, we rejected the plaintiffs' theory of a single conspiracy encompassing both false arrest and malicious prosecution.  <u>Id.</u>

<u>Nieves</u> is the beacon by which we must steer.  In this case, as in <u>Nieves</u>, there is absolutely no evidence of a conspiracy

-10-

that began before the date of the plaintiff's arrest.  The plaintiff and the officers were strangers, and the plaintiff has never alleged a preexisting conspiracy.  Robinson is, therefore, inapposite.

The plaintiff grasps at one last straw.  She notes that, in Nieves, we left open the possibility of "rare and exotic circumstances in which a section 1983 claim based on a warrantless arrest will not accrue at the time of the arrest."  Id. at 52 n.4; accord Calero-Colón v. Betancourt-Lebrón, 68 F.3d 1, 4-5 (1st Cir. 1995) (Lynch, J., concurring).  But any such opening appears to have been closed by the Supreme Court.  See Wallace, 549 U.S. at 391 (rejecting argument that a false imprisonment claim was actionable after the limitations period had run on the petitioner's theory that "the initial Fourth Amendment violation set the wheels in motion for his subsequent conviction and detention").  In short, we agree with the Seventh Circuit that, after Wallace, later proceedings are irrelevant to the accrual of a false arrest or false imprisonment claim brought under section 1983.[3]  Brooks v. City of Chicago, 564 F.3d 830, 832 (7th Cir. 2009).

That ends this aspect of the matter.  We hold that the plaintiff's false imprisonment claim, which accrued on September 4,

---

[3] In an abundance of caution, we add that even if the possibility of a later accrual date still exists — which we doubt — this case does not present the rare or exotic circumstances that would be needed to trigger the possibility.

2003, is barred by the applicable three-year statute of limitations.

### B.  Malicious Prosecution.

The plaintiff's remaining cause of action posits that the defendants violated her Fourth Amendment rights by wrongfully instituting legal process against her.  It remains an unanswered question whether a malicious prosecution claim is cognizable under the Fourth Amendment and section 1983, see Wallace, 549 U.S. at 390 n.2; Nieves, 241 F.3d at 54, and we do not propose to resolve that uncertainty today.  In its present posture, the record here allows us to assume, without deciding, that malicious prosecution can embody a Fourth Amendment violation and, thus, ground a cause of action under section 1983.  We proceed on that assumption.

To succeed in maintaining a section 1983 claim for malicious prosecution, a plaintiff must show a deprivation of liberty, pursuant to legal process, that is consistent with the concept of a Fourth Amendment seizure.  Nieves, 241 F.3d at 54; Britton v. Maloney, 196 F.3d 24, 28 (1st Cir. 1999); Singer v. Fulton County Sheriff, 63 F.3d 110, 116-17 (2d Cir. 1995).  In the typical situation, the requisite legal process "comes either in the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure)."  Nieves, 241 F.3d at 54.

The plaintiff tries to support her claim that a seizure occurred in several different ways. Her first effort hinges on the assertion that her arrest was based on the detective's wrongful procurement of a criminal complaint. The evidence is to the contrary. Detective Schaaf swore in an affidavit that the arrest <u>preceded</u> the swearing out and filing of the complaint, and there are no facts in the record to contradict this sequence of events.

The plaintiff nonetheless derives support for her argument from a procedural anomaly. She points to the answer to her complaint in this civil action, in which the defendants admitted the following allegation: "Defendant Schaaf then instituted legal process in the form of a criminal complaint charging the plaintiff with making a False Report to Law Enforcement . . . based upon which legal process the plaintiff was arrested." Even though this argument was made below, the district court did not grapple with the effect of the judicial admission. We must do so.

Ordinarily, a pleading admitting a fact alleged in an antecedent pleading is treated as a binding judicial admission, removing the fact from contention for the duration of the litigation. <u>See</u>, <u>e.g.</u>, <u>Crest Hill Land Dev., LLC</u> v. <u>City of Joliet</u>, 396 F.3d 801, 805 (7th Cir. 2005); <u>see also</u> <u>Schott Motorcycle Supply, Inc.</u> v. <u>Am. Honda Motor Co.</u>, 976 F.2d 58, 61 (1st Cir. 1992). But there are limits to what parties can admit,

see, e.g., Whitfield v. Mun'y of Fajardo, 564 F.3d 40, 44 (1st Cir. 2009), so it is important to parse the particular admission in each case.

We have no difficulty in holding the defendants to the factual component of the admitted allegation: that the detective instituted legal process against the plaintiff in the form of a criminal complaint.  The remainder of the allegation, however, speaks to a matter of law: whether the relationship between the arrest and the complaint was such as to constitute a seizure pursuant to legal process.  Admitting that the plaintiff's arrest was "based upon" the complaint does not answer that legal question.  The allegation, as framed, can fairly be read to mean that the arrest was based upon the events described in the complaint.

Of course, the plaintiff seeks to have us read the admitted allegation to mean that the complaint was the instrument through which the arrest was effected.  That reading is not compelled by the language of the allegation, and we are not aware of any authority that requires us to give it credence.  To be binding, a judicial admission must be "clear," Comm'l Money Ctr., Inc. v Ill. Union Ins. Co., 508 F.3d 327, 336 (6th Cir. 2007), and this one is not.

In all events, a court is not obliged to accept a proposition of law simply because one party elects not to contest it.  See id. (explaining that "legal conclusions are rarely

considered to be binding judicial admissions"); In re Teleglobe Commc'ns Corp., 493 F.3d 345, 377 (3d Cir. 2007) (holding that judicial admissions "must be statements of fact that require evidentiary proof, not statements of legal theories").

Here, moreover, the absurdity of the plaintiff's interpretation of the admission is manifest. For one thing, that interpretation is counter-factual; the record is pellucid that the plaintiff's arrest antedated the issuance of the complaint. Thus, as a temporal matter, the former could not have been "based upon" the latter in the sense that the plaintiff now suggests.

For another thing, the admitted allegation does not purport to contradict the undisputed fact that Detective Schaaf arrested the plaintiff without a warrant. This is important to an understanding of the legal underpinnings of the arrest: although a criminal complaint may, under New Hampshire law, provide grounds for the issuance of an arrest warrant, see N.H. Rev. Stat. Ann. § 592-A:8, a complaint alone cannot serve as a surrogate for a warrant.

The arrest in this case was both warrantless and for a misdemeanor, and New Hampshire law cedes to police officers the power to make warrantless misdemeanor arrests under only three sets of circumstances. See id. § 594:10. None of these paradigms includes the mere existence of a criminal complaint. Thus, the

plaintiff's warrantless misdemeanor arrest could not have been "based upon" the complaint in any relevant sense.

Seen in this perspective, the plaintiff's interpretation of the admitted allegation is unpersuasive. Consequently, we reject her argument that, because of the admission, it must be assumed that a seizure pursuant to legal process took place. On the record as a whole, it plainly did not.

Once we strip away the plaintiff's misplaced reliance on the judicial admission, the frailty of her "arrest-based" malicious prosecution claim becomes apparent. Where, as here, a person is arrested without a warrant and before the issuance of any legal process, that arrest does not form part of a Fourth Amendment seizure upon which a section 1983 malicious prosecution claim may be premised. See Nieves, 241 F.3d at 54; see also Singer, 63 F.3d at 117 (holding that the plaintiff's arrest "cannot serve as the predicate deprivation of liberty because it occurred prior to his arraignment and without a warrant, and therefore was not 'pursuant to legal process'"). In the last analysis, the plaintiff "cannot base a malicious prosecution claim on [her] warrantless arrest, because it did not constitute legal process." Meehan v. Town of Plymouth, 167 F.3d 85, 90 (1st Cir. 1999).

This leaves the plaintiff with the task of showing some post-arraignment deprivation of liberty that amounts to a Fourth

Amendment seizure. See Nieves, 241 F.3d at 54; Singer, 63 F.3d at 117. It is to that inquiry that we now turn.

In this regard, the plaintiff contends that she suffered post-arraignment deprivations of liberty associated with the conditions of her pretrial release. Relatedly, she complains of loss of her job, degradation of her prospects for employment elsewhere, harm to her reputation, and stress (emotional and financial) attendant to trial preparation.

The plaintiff's contention that the conditions of her pretrial release constituted a Fourth Amendment seizure is foreclosed by precedent. Those conditions required her to attend court proceedings, notify the court of any change in address, refrain from committing crimes, and forebear from consuming either controlled substances or excessive quantities of alcohol. These are standard fare — what we have termed "run-of-the-mill conditions of pretrial release." Nieves, 241 F.3d at 55. We have held squarely that such standard conditions "do not fit comfortably within the recognized parameters of the term ['seizure']." Id. The law in other circuits is to like effect. See Kingsland v. City of Miami, 382 F.3d 1220, 1236 (11th Cir. 2004) (noting that no court of appeals "ha[s] been willing to conclude that normal conditions of pretrial release constitute a 'continuing seizure' barring some significant, ongoing deprivation of liberty, such as a restriction on the defendant's right to travel interstate").

In this case, there is no indication that the plaintiff was detained after the initiation of the criminal charge, forced to post a pecuniary bond, subjected to travel restrictions, or otherwise burdened with any significant deprivation of liberty. In the absence of any such impositions, the standard conditions of pretrial release do not rise to the level of a Fourth Amendment seizure.[4]  See Nieves, 241 F.3d at 56; Britton, 196 F.3d at 29.

The argument that loss of employment, reputational harm, and stress can collectively constitute a seizure is equally shopworn. We rebuffed that argument in Nieves, 241 F.3d at 54-55, and we take the same position here. The types of things about which the plaintiff complains are inevitable concomitants of the pendency of criminal charges. If such trappings could constitute a seizure, "virtually every criminal defendant will be deemed to be seized pending the resolution of the charges against him. That would mean, in turn, that nearly every malicious prosecution claim could be brought before a federal court under the aegis of section 1983." Id. at 55. Such a wholesale importation of garden-variety tort concepts into the jurisprudence of section 1983 would trivialize that statute. Cf. Paul v. Davis, 424 U.S. 693, 701

---

[4] Justice Ginsburg's concurring opinion in Albright v. Oliver, 510 U.S. 266, 276 (1994) (Ginsburg, J., concurring), does not tip the balance. The thesis expounded in that concurrence has been considered and respectfully rejected by this court. See Nieves, 241 F.3d at 55-56; see also Kingsland, 382 F.3d at 1236 (collecting cases from other courts of appeals).

(1976) (warning against attempts "to derive from congressional civil rights statutes a body of general federal tort law").

To say more on this issue would be supererogatory. We agree with the court below that the plaintiff failed to make out the Fourth Amendment violation needed to sustain her section 1983 malicious prosecution claim.

### C.  **The Rule 59(e) Motion**.

In view of the foregoing, we need not discuss the denial of the plaintiff's motion to alter or amend the judgment. The denial of such a motion is reviewed for abuse of discretion. Negrón-Almeda v. Santiago, 528 F.3d 15, 25 (1st Cir. 2008). Summary judgment here was not a matter of discretion but, rather, was legally compelled. Accordingly, the district court did not abuse its discretion in refusing to alter or amend the judgment.

### III. CONCLUSION

We need go no further. For the reasons elucidated above, we reject the plaintiff's appeal.


**Affirmed**.